# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| LOUIS NEAL ZEIGENBEIN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | No. 4:17-CV-2749 AGF |
| STEVE HOWELL, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff Louis Neal Zeigenbein, an inmate at Moberly Correctional Center ("MCC"), for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that the plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $26.36. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $131.83. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $26.36, which is 20 percent of plaintiff's average monthly deposit.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989); *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987). A complaint fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## The Complaint

Plaintiff filed this § 1983 claim against the following ten employees of Missouri Department of Corrections ("MDOC") and medical professionals, alleging violations of his constitutional rights: Steve Howell, Plant Manager, Missouri Vocational Enterprises; Eric Jones, Floor Manager, Missouri Vocational Enterprises; Warren Howard, Supervisor, Missouri Vocational Enterprises; Tiffany Breeden, Registered Nurse, South Central Correctional Center

("SCCC"); Mr. Coatney, Investigator; Laurel Davison, Nurse Practitioner, MCC; Dr. Ruane Stamps, MCC; Sergeant Ipoc, Property Room Sergeant, SCCC; Terena Ballinger, Assistant Deputy Warden, SCCC; and John Scott, Assistant Director, MDOC.

From July 2012 to May 2014, plaintiff was employed as a carpentry helper in the Missouri Vocational Enterprises ("MVE") program at SCCC in Licking, Missouri. MVE is a program of the Division of Offender Rehabilitative Services within MDOC. MVE provides job training for offenders.[1]

On April 17, 2014, plaintiff was severely injured working at MVE while cleaning the sanding belt on a Timesaver sanding machine.[2] Two weeks prior to his injury, defendants Eric Jones, Floor Manager at MVE, and Warren Howard, Carpentry Supervisor at MVE, asked plaintiff to operate the Timesaver sanding machine. To clean the belt on the Timesaver, plaintiff was directed by Mr. Howard to override the safety switch and, with the safety door open, clean the Timesaver belt using a sanding belt block cleaner that was inappropriate for the Timesaver machine.

Plaintiff had used a Timesaver machine before, and told Mr. Howard that there was typically a sanding belt block cleaner installed on the Timesaver machine to clean the sanding belt. Plaintiff states that Mr. Howard said that this block cleaner for the Timesaver was back-ordered, or that he did not want to order it. Instead, Mr. Howard said they were going to use the smaller block cleaner for the disk sander or belt sander to clean the belt on the Timesaver.[3]

---

[1] *See* https://doc.mo.gov/mve/html/about.html (last visited Nov. 27, 2017).

[2] Plaintiff calls the machine that caused his injury a "time saver." Timesavers, Inc. is an international company that manufacturers wood sanding machinery, including wide belt sanders. The company's machines are called Timesavers. *See* http://www.timesaversinc.com/ (last visited Nov. 27, 2017).

[3] Prior to using the block cleaner from the disk sander to clean the Timesaver, plaintiff states they had been cleaning the Timesaver belts in a strip tank, using water. This technique, however,

Plaintiff understood the block cleaner for the disk sander was too small to run through the Timesaver. When he questioned Mr. Howard, Howard said they were going to "Open the back door and [override the safety switch] and someone else will turn on the machine in the front." Plaintiff refused to operate the machine in this manner, and again Mr. Howard directed him to do so. Plaintiff said, "No, you are having me [] do something that goes against what is taught, you do not put your hands near moving belts[.] [T]he warning signs on the machine reads, 'DO NOT PUT YOUR HANDS NEAR MOVING BELTS AND DO NOT OPERATE MACHINE WITH THE DOOR OPEN.'" Defendant Howard threatened plaintiff that he would do it or he would be sent to "the hole." Plaintiff states that he did as he was told despite what he had been taught "because I'm in prison." Plaintiff states that after a few times of cleaning the Timesaver belt this way, Mr. Jones wrote an inter-office communication stating that plaintiff would clean the Timesaver belt against the manufacturer's safety recommendations.

On April 17, 2014, plaintiff was cleaning the Timesaver belt with the block cleaner from the disk sander, as he was directed by Mr. Howard, and the block cleaner "hit a bad spot in the sanding belt causing [his] left hand to be kicked into the sanding belt pulling [his] fingers with [his] knuckles resting on the rollers and grinding [his] fingers to the bone." Plaintiff was immediately sent to the medical unit, where Tiffany Breeden, RN, treated his injury with saline solution and gauze. Within hours, he was transferred to a hospital in Houston, Missouri and treated by an emergency room doctor and a hand doctor. The hand doctor transferred plaintiff to St. Mary's Hospital in Jefferson City, Missouri, where plaintiff had surgery within twenty minutes of his arrival.

---

caused the belts to shred in the Timesaver when sanding boards. Plaintiff states that defendants Howard and Jones were concerned too much money was being spent on sanding belts, so they were going to use the block cleaner for the disk sander on the Timesaver. *See* Doc. 1-2 (declaratory statement).

An investigator from MDOC, defendant Mr. Coatney, questioned plaintiff while he was in the Transitional Care Unit in Licking, Missouri. Plaintiff states that he told Mr. Coatney that Mr. Jones wrote the inter-office communication and Mr. Howard gave him the directive to clean the belt on the Timesaver by overriding the safety switch in the back of the machine. Mr. Coatney did not speak with Mr. Howard. On May 29, 2014, Mr. Coatney issued plaintiff a conduct violation.

Plaintiff filed a grievance. Assistant Deputy Warden of SCCC, Terena Ballinger, and Assistant Director of MDOC, John Scott, answered the grievance. They said that the grievance was denied because plaintiff was found guilty and sanctioned for the conduct violation. Plaintiff states Mr. Coatney's investigation report stated that plaintiff purposefully stuck his hand in the Timesaver, causing his own injury. Plaintiff states this conduct violation was issued to cover up the acts of the MVE managers. He was never sanctioned for the conduct violation.

Plaintiff has had two additional surgeries to his hand since his initial surgery on April 17, 2014. Plaintiff has severe and permanent damage to his hand, including loss of use of fingers, loss of all grip strength, and significant nerve damage. He also suffered injury to his neck in the accident and underwent cervical disc fusion surgery. For relief plaintiff seeks an injunction, $25 million in compensatory damages, and $100 million in punitive damages.

## Discussion

Plaintiff's complaint alleges seven separate claims of constitutional violations. For purposes of clarity on initial review under 28 U.S.C. § 1915(e)(2), the Court will address plaintiff's claims as they are alleged against each defendant.[4]

---

[4] Plaintiff alleges claim five against an unknown defendant not listed in the caption of plaintiff's complaint. Plaintiff states that an "unknown Manager" denied plaintiff vocational training due to his disability. Because no defendant has been named, the Court will dismiss this claim without prejudice. If necessary, plaintiff may seek leave to amend his complaint to name a defendant.

A.  Defendants Eric Jones and Warren Howard

Plaintiff alleges defendants Eric Jones and Warren Howard asked him to run the Timesaver "due to excess money being spent on sanding belts."[5] Plaintiff informed defendant Howard that his proposed method of cleaning the Timesaver belt by overriding the safety switch was not safe and plaintiff refused to do so. Under threat of being sent to "the hole," plaintiff states he acquiesced and cleaned the Timesaver in the manner Howard ordered. This directly caused his injury.

To prevail on an Eighth Amendment claim of failure to protect, plaintiff must show he is "incarcerated under conditions posing a substantial risk of serious harm" and that the prison officials subjectively knew of and disregarded that safety risk. *Smith v. Arkansas Dept. of Corr.*, 103 F.3d 637, 644 (8th Cir. 1996).

The Court finds plaintiff's Eighth Amendment claim against defendants Eric Jones and Warren Howard states a plausible claim for relief under § 1983 and will issue process upon them.

B.  Medical Defendants—Tiffany Breeden, RN; Laurel Davison, NP; and Dr. Ruanne Stamps

Plaintiff has named as defendants Tiffany Breeden, a registered nurse at SCCC; Laurel Davison, a nurse practitioner at MCC; and Dr. Ruanne Stamps, lead doctor at MCC.

Ms. Breeden was the nurse that initially treated plaintiff's hand injury with gauze and saline solution before his transfer to the hospital in Houston, Missouri. Plaintiff has made no

---

[5] In his complaint, plaintiff alleges his Eighth Amendment claim against Mr. Howard only. In his declaratory statement attached to the complaint, however, plaintiff states that both Messrs. Howard and Jones asked him to run the Timesaver. He states that Mr. Howard threatened to send him to "the hole" if he refused; and Mr. Jones wrote the inter-office communication stating plaintiff would operate the Timesaver against the manufacturer's safety recommendations. Liberally construing the complaint and attached declaration, the Court finds that plaintiff has brought Eighth Amendment claims against both defendants Howard and Jones. *See* Fed. R. Civ. P. 10(c).

allegations of constitutional violations against Ms. Breeden in his complaint, and therefore she will be dismissed.

Laurel Davison, a nurse practitioner, is listed as a defendant in the caption of plaintiff's complaint, but she is mentioned only once in the body of the complaint. The entirety of plaintiff's factual allegation as to Ms. Davison is: "August 9, 2017, Seen Dr. Laurel Davison for Dr. Stamps, asked how the Cymbalta is doing. Nothing else done." Because plaintiff has made no allegations of any constitutional violation against Ms. Davison, she also will be dismissed.

Plaintiff alleges Dr. Stamps has denied him medication prescribed for his condition, has denied him appropriate bedding for his cervical disk protrusion, and denied him access to an orthopedic surgeon and all other specialists.

To prevail on his Eighth Amendment claim, plaintiff must show that (1) he suffered from an objectively serious medical need and (2) defendant knew of, but deliberately disregarded, that need. *See Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011). The Court finds that plaintiff has alleged a plausible Eighth Amendment violation against Dr. Stamps, and will issue process upon her.

C. <u>Defendants Steve Howell, Terena Ballinger, and John Scott</u>

Plaintiff names as defendants Steve Howell, MVE Plant Manager; Terena Ballinger, Assistant Deputy Warden SCCC; and John Scott, Assistant Director MDOC. Plaintiff has not set forth any facts indicating that any of these three named defendants were directly involved in or personally responsible for the alleged violations of his constitutional rights.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for

incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits). Supervisors cannot be held vicariously liable under § 1983 for the actions of a subordinate. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675-76 (2009). To state a claim, the plaintiff must plead that the supervising official, through his own individual actions, has violated the Constitution. *Id.*

Because plaintiff has not alleged defendants Howell, Ballinger, and Scott were directly involved in his alleged constitutional violations, the complaint fails to state a claim upon which relief can be granted as to these defendants. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (noting that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983); *Woods v. Goord*, 1998 WL 740782, *6 (S.D.N.Y. Oct. 23, 1998) (receiving letters or complaints does not render prison officials personally liable under § 1983). The Court will dismiss plaintiff's claims against these defendants.

### D. <u>Defendant Mr. Coatney</u>

Plaintiff alleges Mr. Coatney conspired with defendants Howard and Jones to cover up the alleged constitutional violation. Mr. Coatney investigated the claim, and issued plaintiff a conduct violation.

To plead a § 1983 claim for conspiracy, a plaintiff must allege:

> (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. The plaintiff is additionally required to [allege] a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim.

*Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 798 (8th Cir. 2013) (*quoting White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008)). To demonstrate the existence of a conspiracy, a plaintiff also must allege a meeting of the minds among the conspirators "sufficient to support

the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights." *Id.*

Here, plaintiff has failed to plead a meeting of the minds among the alleged conspirators. The complaint contains no facts indicating that Mr. Coatney conspired with Messrs. Howard and Jones. Mr. Coatney interviewed plaintiff, investigated the accident, and concluded plaintiff purposefully stuck his hand in the machine, causing his own injury. While plaintiff clearly disagrees with this finding, disagreement alone is not enough to prove Mr. Coatney conspired with Messrs. Howard and Jones. Without further facts implying that Mr. Coatney agreed to deprive plaintiff of any constitutional rights, plaintiff fails to state a claim for conspiracy against Mr. Coatney under 42 U.S.C. § 1983.

E.  <u>Defendant Sergeant Ipoc</u>

In the caption of the complaint, plaintiff lists as a defendant Sergeant Ipoc, Property Room Sergeant, SCCC. Plaintiff states that while he was incarcerated at SCCC, he gave all his legal evidence regarding this case to a fellow inmate practicing law, Ace Wilkens. When plaintiff was transferred to MCC, Mr. Wilkens was placed in segregation. When Mr. Wilkens was released from segregation, plaintiff states Sergeant Ipoc would not allow Wilkens to have access to any legal property.

"The taking of an inmate's legal papers can be a constitutional violation when it infringes his right of access to the courts. The taking of legal papers will often (though perhaps not always) interfere with an inmate's right of access to the courts." *Goff v. Nix*, 113 F.3d 887, 892 (8th Cir. 1997) (internal citation omitted). Such a taking of legal papers can only be justified if it is reasonably related to a legitimate penological interest. *Id.*; *see also Bounds v. Smith*, 430 U.S. 817 (1977).

The Court finds that plaintiff has alleged a plausible constitutional violation against Sergeant Ipoc for denying or burdening plaintiff's reasonable access to the courts, and will issue process upon this defendant.

F. Plaintiff's Claims Against Defendants in Their Official Capacities

The Court will dismiss all of plaintiff's claims brought against all defendants in their official capacities. As to plaintiff's claims against employees of MDOC, naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). To state a claim against a municipality or a government official in his or her official capacity, a plaintiff must allege that a policy or custom of the government entity is responsible for the alleged constitutional violation. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978). Plaintiff's complaint does not contain any allegations that a policy or custom of a government entity was responsible for the alleged violations of his constitutional rights. As to plaintiff's claims against the medical defendants, the complaint does not contain any allegations that a policy or custom of Corizon was responsible for any alleged violations of his constitutional rights.

As a result, the complaint fails to state a claim upon which relief can be granted against all defendants in their official capacities, and these claims will be dismissed.

G. Plaintiff's Motion to Appoint Counsel

Finally, plaintiff has filed a motion to appoint counsel. There is no constitutional or statutory right to appointed counsel in civil cases. *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984). In determining whether to appoint counsel, the Court considers several factors, including (1) whether the plaintiff has presented non-frivolous allegations supporting his or her prayer for relief; (2) whether the plaintiff will substantially benefit from the

appointment of counsel; (3) whether there is a need to further investigate and present the facts related to the plaintiff's allegations; and (4) whether the factual and legal issues presented by the action are complex. *See Johnson v. Williams*, 788 F.2d 1319, 1322-23 (8th Cir. 1986); *Nelson*, 728 F.2d at 1005.

After considering these factors, the Court finds that the facts and legal issues involved are not so complicated that the appointment of counsel is warranted at this time. The Court will deny plaintiff's motion to appoint counsel without prejudice to refiling later in the case.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis is **GRANTED**. [ECF No. 2]

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $26.36 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the complaint, pursuant to the service agreement the Court maintains with the Missouri Attorney General's Office, as to defendants Eric Jones, Warren Howard, and Sergeant Ipoc in their individual capacities.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the complaint, pursuant to the service agreement the Court maintains with Corizon, as to Dr. Ruanne Stamps in her individual capacity.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to defendants Steve Howell, Tiffany Breeden, Mr. Coatney, Laurel

Davison, Terena Ballinger, and John Scott because, as to these defendants, the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both. Plaintiff's claims against these defendants are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's claims brought against all defendants in their official capacities are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel is **DENIED** without prejudice. [ECF No. 3]

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 4th day of December, 2017.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE